## Clarion County Council of Sportsmen's Clubs et al. v. Lewis, Secretary, etc., et al.

*Grover C. Ladner, Anne X. Alpern* and *William D. Henning,* for plaintiffs.

*Thomas W. Corbett,* Deputy Attorney General, *C. Philip Moore, Jr.,* Assistant Deputy Attorney General, and *Frank F. Truscott,* Attorney General, for defendants.

RICHARDS, P. J., February 10, 1954.—Plaintiffs filed this bill of complaint seeking to restrain defendants from cutting live timber in Cook Forest. Defendants filed preliminary objections. The issues thus raised have been duly argued and are before us for decision.

The essence of the complaint is that Cook Forest was acquired by the Commonwealth, pursuant to the provisions of the Act of April 14, 1927, P. L. 295, in trust for use as a public park; that the Secretary of Forests and Waters is charged with the duty of administering the park; that the act confers no authority to cut live timber; that the department has been cutting live timber; that in doing so the secretary and his agents are acting illegally, and that the cutting of live timber should be restrained.

The preliminary objections consist of a demurrer and a motion to strike. The demurrer states: "The facts alleged in the complaints do not set forth a cause of action and are not grounds upon which this court may grant the relief prayed for by the plaintiffs."

The motion to strike contains two paragraphs. The first states: "The complaint does not conform to the Rules of Civil Procedure in that the requirement of Rule 2152 is not met." This has been cured by amendment of the bill. The second paragraph reads: "The material facts are not averred in a concise and summary manner, but on the contrary, are interwoven with conclusions of law stated in paragraphs 8, 9, 11, 12, 14 and 15."

We are of the opinion, however, that the bill adequately raises the legal question of the authority of defendants to cut live timber. Hence, we dismiss the motion to strike. That leaves for our consideration the demurrer.

### Discussion

We shall consider some aspects of the Act of 1927, supra. The title reads in part as follows:

"An act providing for the acquisition by the Department of Forests and Waters, in the name of the Commonwealth, of certain lands in Jefferson, Forest, and Clarion Counties, Pennsylvania, belonging to the A. Cook Sons Company, for use as a State Park and Forest Reservation . . . providing for the management of said property by said Department and defining the uses to which the property shall be put."

There is nothing here or in the act itself which indicates an intent to create a trust. Rather the absolute ownership is in the Commonwealth, save only "oil and gas, as heretofore conveyed with the right to remove the same in the ordinary and customary manner", as provided in section 1. This case involves no oil or gas.

The last paragraph of the preamble to the act states:

"It is recognized that the acquisition of said property by the Commonwealth, for the use of all of the people, will be of great value in furnishing recreation, and opportunities for education and scientific study, as well as the monetary value to the people by reason of the increasing tourist trade which it will tend to bring to the people of Pennsylvania."

There is nothing here to suggest any commercial use of the property. Even the tourist trade is for the benefit of the people of Pennsylvania and not for the direct benefit of the State itself.

Section 1 reads in part as follows:

"That for the purpose of *preserving* and *perpetuating* a portion of *the original forests* of Pennsylvania, particularly of the conifer family now largely extinct, *in the interest of wholesome outdoor recreation, and the study and enjoyment of the same*, to the people of the Commonwealth, *for forestry conservation*, and the preservation and maintenance of distinctive *natural views and conditions*, and the advantages to the people of the Commonwealth *arising therefrom* . . . the Department of Forests and Waters is hereby authorized

to acquire, in the name of the Commonwealth of Pennsylvania, certain lands . . . now belonging to the A. Cook Sons Company . . . *the same to be laid out, preserved, and maintained as a public place or park,* to be known and designated by the name of 'Cook Forest Park' . . ."

Language could scarcely be clearer that the intent was to establish a park, preserve natural conditions and not to establish a lumbering operation.

Section 2 is significant only to the extent that the payment of $200,000 by the Cook Forest Association to the State Treasury is a condition precedent to the purchase of the land involved.

Section 3 provides:

"After the said property shall have passed into the possession of the Commonwealth, the Department of Forests and Waters shall have full *control* and supervision thereof, with power to adopt and carry into effect plans for the improvement, *preservation* and use thereof. The department may enforce such rules and regulations, not inconsistent with the laws of this Commonwealth, as it may make for the protection of life, and property, the maintenance of good order, *and the carrying into effect the full and proper use of said property as a State Park.* The department shall also have power, with the approval of the Governor, to make and carry out such plans for the *profitable utilization of the dead and down timber,* and such other operations for the profitable employment of said lands, *as may not be inconsistent with their full use as a State Park,* and as to the said department seems to be to the best interests of the Commonwealth, . . ."

The present bill raises no question as to dead and down timber, save that Governor Fine has not granted approval. It does not aver that no other Governor has granted approval, or that approval previously has been revoked.

From all of the foregoing, we are thoroughly convinced that the legislature had no intent to develop the tract as a source of revenue from lumbering operations. There was no intent to develop stands of timber to be utilized commercially. The real intent seems to be the establishment of a forest park having recreational, scientific and esthetic values.

With this conclusion we believe that counsel for plaintiffs and defendants are in accord, judging by remarks made at the argument. The real controversy arises from a difference of opinion as to the means which should be adopted to carry out the expressed intent of the legislature.

That the department has had a plan based upon expert advice is undisputed. That some experts may disagree with the plan is obvious. For example, one school of thought might remove dead, diseased or leaning trees. The other would substantially let nature take its course. The act mentions nothing but "dead and down" timber as the subject of profitable utilization. But a tree may be dead and not down, it may be down and not dead. It may be leaning against another tree, it may be diseased. Surely the general intent of the legislature intended paths, fire lanes, roads, picnic areas and protection of the park generally. It can scarcely be argued that the department has no discretion as to these matters. Section 3 of the act gives the department "full control and supervision and authority to make rules and regulations to carry into effect the full and proper use of said property as a State Park". We cannot substitute our discretion for theirs, nor can we compel them to accept any given school of thought in exercising their discretion. The legislature has committed this responsibility to the department.

The bill does not charge that defendants have embarked upon general lumbering operations, although it does aver a cutting of live timber on a rather large

scale. We are convinced that the department did not and does not intend to use the park as a producer of lumber for commercial purposes. What it has done is an incident to the park management.

We conclude that defendants have acted in good faith in the exercise of the discretion vested in them by the legislature, that they have not exceeded their legal authority and that we may not interfere with their exercise of discretion.

### Decree

And now, to wit, February 10, 1954, for these reasons, we sustain the demurrer set forth in the preliminary objections and dismiss the bill at the cost of plaintiffs.